IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-13 Erie |
| ) | |
| WILLIAM JAMES MACARTHUR ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW, comes the defendant, William James MacArthur, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files his Position With Respect To Sentencing Factors. In support thereof, counsel states:

Mr. MacArthur agrees that the advisory guideline imprisonment range in his case is 46 to 57 months. Based upon the unique circumstances of his case, and the potential he has for helping others through the Maria House Projects, Mr. MacArthur respectfully requests that the Court sentence him to a shorter term of imprisonment than recommended by the guidelines supplemented by a term of supervised release that requires him to return to the Maria House Projects program following incarceration.

Mr. MacArthur is not a typical bank robber. Before Mac turned 59-years old he had no criminal history whatsoever. Mac served his county in Vietnam, receiving numerous military decorations and awards. Mac had been married shortly before leaving for Vietnam, and his first child was born while Mac was in Vietnam. When Mac returned from Vietnam he found work and supported his new family. For the next twenty to twenty-five years Mac seemed to live the American dream, working hard and supporting a loving family. Unfortunately, alcoholism was at work eating away at Mac and his life. In the mid 1990's his marriage disintegrated due to alcoholism. (PSR ¶ 40)

After his marriage ended, Mac continued to work steadily as a salesman and make pretty good money. (PSR ¶ 49) From 1997 through 2000, Mac had a good job with Motor Truck Equipment-Pittsburgh, Inc., where he was making about $50,000 a year. (PSR ¶ 49) But when Mac was laid off from this job he handled the set back by increasing his drinking and things went downhill from there. (PSR ¶43) Mac made significantly less money in 2001 and 2002, had no reported income for 2003 and earned only $11,600 in 2004. During this period the drinking increased as the money decreased.

In July 2004, Mac was arrested for driving under the influence. He eventually pled guilty to that offense and received a sentence of 3 months to 5 years imprisonment. Mac is currently on parole in that case. Later in 2004, Mac received two traffic tickets one for unauthorized use of a vehicle registration and one for not having his car registered. In February 2005, Mac wrote two bad checks which resulted in criminal charges being filed. Clearly, Mac's life was in a tailspin. He was drinking 3/4 of a gallon of vodka a day. On March 9, 2005, Mac committed the bank robbery.

Since Mac's release on bond in this case he has been in placement with the Maria House Projects, a treatment program founded by Father James Peterson. This Court is familiar with the outstanding work done by Father Peterson and the staff of Maria House Projects. Mac has embraced the Maria House program. Mr. Joe Tarquinio, the administrator for the Maria House Projects, provided a letter detailing Mac's progress at Maria House Projects to the probation office. A copy of that letter is being provided under separate cover. Mr. Tarquinio describes Mac as being extremely cooperative in attending mandatory and nonmandatory meetings. Mac attends a minimum of five AA meetings a week and quickly obtained a wonderful sponsor and building relationships with "old timers." Mac used his sponsor and the "old timers" as a resource to help himself through

obstacles in his path to recovery. Capitalizing on these relationships, Mr. Tarquinio asked Mac to arrange for speakers to come to Maria House Projects' AA meetings. Mac immediately made a list of AA members and made arrangements for them to speak at Maria House Projects' AA meetings.

Mr. Tarquinio saw Mac progress through the program and use his progress to help other residents in their recovery. This is a theme echoed by other volunteers at Maria House Projects as discussed below.

Mac performed numerous tasks at Maria House Projects such as ordering and cooking food for the other residents. Mac became trusted enough by the staff to be given the task of collecting rent from other program residents. Mr. Tarquinio will explain at sentencing that this is something that has never been done before. Mac has had no problems with collecting the rent, and has been consistently honest with the money collected. As Mr. Tarquinio explains in his letter, Mac had the opportunity in one instance to steal the rent money when a staff member accidently left the money envelope in the office. While Mac could have easily stolen the money, "he did what he knew was right and honorable" and immediately contacted staff.

Mr. Tarquinio also speaks about Mac's plan to attend graduate school at Edinboro University to earn a Masters Degree in Social Work. Mac has been accepted at Edinboro and Mr. Tarquinio believes Mac has the intelligence and drive to attain his academic goals. Mr. Tarquinio believes Mac's "ability to help others in recovery will be enhanced by his life experiences and his desire to 'give back.'" Mac's time at Maria House Projects has also helped his awareness of the severity of his crime.

Of course, Mac isn't perfect. Mr. Tarquinio notes that Mac needs to get better at helping with physical labor and accepting constructive criticism. These concerns have been discussed with Mac,

and Mr. Tarquinio does not feel that these are major concerns.

In the end, Mr. Tarquinio asks the Court to consider not only Mac's progress in the Maria House Projects' program but also the leadership he has provided for the other residents. Based upon that leadership, the Maria House Projects is willing to continue Mac's placement after he has completed any term of imprisonment imposed by the Court. Mr. Tarquinio will be at Mac's sentencing hearing to provide concrete examples of the ways in which Maria House Projects staff would use Mac to further help other residents.

Enclosed under separate cover are numerous letters in support of Mac. Included among those letters are letters from Lawrence Carone, Dave Capan, and Emil Chimenti who are all volunteers at the Maria House Projects. Mr. Carone has volunteered at the Maria House Projects for three years and has never seen a client progress through the AA program as well as Mac. Mr. Carone's letter explains how Mac's "good insight and honest appraisal of himself" are very helpful in group counseling with younger residents because it shows the young men that the program can work. Mr. Caplan has similar things to say about Mac. Mr. Caplan runs a bible study group and notes that Mac actively participates in the group sessions "and has some good insights which are helpful to all in the group." Mr. Chimenti has volunteered at the Maria House Projects for 25 years and currently runs a bible study group on Thursdays along with providing spiritual guidance upon request. Mr. Chimenti believes that Mac "has embraced our program with sincerity and a willingness to participate. He appears to have come to a spiritual awakening through Sacred Scripture showing him how he should live his life to become beneficial to himself, his family and his community."

Mac has used Alcoholics Anonymous to not only address his alcohol addiction but to change his life so that he can stay sober. Mac's AA sponsor, Frank Hallman, speaks very highly of Mac and

4

the work Mac has done in the program. Mac is the secretary and treasurer of his home AA group. Mr. Hallman relates that Mac is very active in AA and has the potential to help many others. Indeed, Mr. Hallman states that although he has been in AA for 16 years, "[s]ometimes I wonder who is sponsoring who because of the spiritual, moral & accepting things that Mac has taught me." Jeff Cox has been an AA member for 8 ½ years and is very supportive of Mac's efforts to use AA's 12 step program in all aspects of his life. Mr. Cox explains that he has watched Mac grow spiritually and come to enjoy sobriety. Mr. Joseph Barnhart is also an AA member who is very supportive of Mac. Mr. Barnhart's letter is brutally honest and therefore very insightful. While Mr. Barnhart acknowledges his inability to predict Mac's future behavior he states that it is his impression that Mac "has done everything suggested that he needs to do to not only quit drinking but change his lifestyle to help him stay sober in the future." Perhaps most importantly, Mac "does not talk about excuses for his past conduct or about how difficult and humiliating his actions have been for himself. Rather he tends to speak of recognizing the harm he has caused; what he is doing now to live differently; and, his readiness to accept the consequences of his actions."

In addition to AA meetings, Mac has also received addiction counseling through the Greater Erie Community Action Committee (GECAC). A letter from Trisha Wilson, Mac's Drug and Alcohol Counselor at GECAC is included under separate cover. Mac attended 26 individual counseling sessions and 7 group sessions. Ms. Wilson states that Mac "presented with a positive attitude and good motivation for sobriety. He showed a great interest in improving his life and was very invested in his treatment." GECAC successfully discharged Mac from their program on February 16, 2006, stating that his prognosis for continued sobriety was good.

Mac has also received support from a surprising source; his ex-wife and her brother and

sister. Included in the letters to the Court are letters from Patricia MacArthur, Daniel Wilson, and Kimberly Bohrer. In Mrs. MacArthur's letter to the Court, and in her comments to the probation officer (PSR ¶ 40) she states that Mac was a good provider who worked hard to support the family. Mac's drinking eventually resulted in the couples' divorce. Mrs. MacArthur's brother and sister are both very support of Mac. Both discuss their belief that Mac is a good person who became consumed by alcohol.

Mac has also written a letter to the Court detailing his plans for the future include attending graduate school at Edinboro University to obtain a Master Degree in Social Work with an emphasis on rehabilitative counseling. Mac wants to use his life experience to help others who are going through hard times in their lives. Mac has been accepted at Edinboro and included in the letters to the Court is a writing sample he provided to Edinboro as part of the application process entitled "The Most Important Characteristics Of A Counselor." Also enclosed is a copy of a letter Mac sent to the bank employees who were the victims of his offense. It is clear from the presentence report that Mac's crime traumatized the bank employees and his release on bond disappointed the employees. Mac's letter contains a heartfelt apology and also tries to explain that some good has come from his release on bond and placement at the Maria House Projects. Hopefully, the apology and explanation eased some of the victims' pain.

What is an appropriate sentence in this case? Only the Court can answer that question, but counsel believes it is important to recognize and consider Mac's attempts to bring some good out of his crime. "And that, I believe, is what true redemption is, . . ., when guilt leads to good." Khaled Hosseini, The Kite Runner 302 (Riverhead Books 2003). Mac's guilt has lead to some real good and thus, some real redemption. Mac has been able to face his addiction and begin his recovery. More

importantly, Mac has used his life experience to help others on their path to recovery. Hopefully, that help can continue at the Maria House Projects. Mr. Tarquinio said it best when he asked the Court "to consider the progress that [Mac] has made in our program and the leadership he has provided for the other residents." When the Court considers these facts, it should become apparent that a sentence below that recommended by the Sentencing Guidelines is called for in this case.

A period of incarceration must be served, but counsel respectfully submits that a period of incarceration of a year and a day followed by three years of supervised release with the condition that Mac reside at the Maria House Projects while on supervised release will adequately punish Mac for his offense but also give him the best opportunity to help others avoid the mistakes he has made. This sentence will have Mac either in prison or at the Maria House Projects for four years, well within the low end of the suggested guideline imprisonment range. Unlike four year of imprisonment, however, Mac will have the opportunity to use his experience to help young men at risk in our community deal with their addictions and other life issues in an effort to prevent them from committing future crimes. That is a situation that benefits us all.

Respectfully submitted,

/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
PA I.D. No. 88653